BEATTY, Justice.
Appeal by the plaintiffs from a judgment for the defendants in a suit to have certain land sold for division. We reverse and remand with directions.
At one point in time the real estate in question, a residential lot in Selma, was owned by Ellen Owens Lanier. She lived in a home there with her husband, Andrew Lanier. On May 9, 1942 she conveyed an undivided one-half interest in the property to her husband, Andrew. Subsequently, on September 1, 1955, Ellen and Andrew executed a mortgage to lia F. Kynard, securing a loan of $1,800.00. Then on October 16, 1956 Ellen died intestate leaving as heirs at law her husband Andrew and five nieces and nephews, children of her deceased sister, Missouri Ellis.
In October, 1957, the nephews conveyed their interests in the property to their sister, Rosa Smith (also known as Laverna Owens Smith). The present plaintiffs are descendants of the deceased sister, Missouri Ellis.
Following Ellen’s death her husband Andrew continued to make payments on the mortgage to Kynard. On August 16, 1955 the mortgage was assigned by Kynard to Andrew Lanier, and a short time later, without any actual notice to his deceased wife’s heirs, Andrew instituted foreclosure proceedings. At the foreclosure sale on January 28, 1966 the property was sold to Andrew as the highest bidder for the sum of $3,000.00.
Sometime during January, 1966 before the sale, Ernestine Smith, a great-niece of Ellen Lanier, saw in a local newspaper an advertisement concerning the mortgage foreclosure. She notified her aunts, Willie Beavers and Rosa Smith. None of them had any previous knowledge of the mortgage foreclosure. They employed a local lawyer, and during the month following foreclosure he discussed the matter with the lawyer who had handled the foreclosure sale. This conversation was followed by a letter from the former to the latter on March 10, 1966 in which he asserted the interests of his clients in the land.
On June 10, 1966, less than six months after the heirs had actual knowledge of the foreclosure and purchase by Andrew Lani *645 er, they filed this suit for division, making a formal offer to pay their fair contribution to satisfy the mortgage encumbrance. On July 27, 1966 the defendant, Andrew, demurred to the complaint. This demurrer was overruled on September 22, 1970 and the defendant was granted thirty days to further plead and to answer propounded interrogatories. The record shows that a period of time occurred then in which the defendant’s lawyer and the defendant were at odds about the case, resulting in the withdrawal of the defendant’s lawyer on March 8, 1971. The trial court granted the defendant ten days to employ other counsel. Neither the defendant personally nor any lawyer for him appeared in the case up to July 23, 1973, the date of the defendant Andrew’s death. Andrew’s last will and testament was admitted to probate on December 3, 1974. The record shows further that on July 13, 1976 the plaintiffs advised the trial court of the defendant’s death, of the probate of his will, and of the devisees named in the defendant’s will, and then moved for an order substituting those devi-sees as parties defendant in this action. On August 5, 1976 the trial court, after a hearing ore terms, entered an order removing Lonnie Ellis and Alfonzo Ellis as parties plaintiff, and substituting Esterline M. La-nier, the second wife of Andrew who continued to live in the house following his death, Doris Virginia Cooks, Kenneth Reed Cooks, Ronnie J. Cooks, and Maknita Cooks as parties defendant in place of Andrew Lanier. The substituted defendants were named in Andrew’s will as devisees of the real estate in question.
The case was tried on October 13, 1977 following which the trial court entered a decree denying relief to the plaintiffs. The court’s decree contained findings of fact which include this statement:
8. That the plaintiffs took no action in regards the real property until June 10, 1966, when they filed this action requesting a sale and division.
The trial court concluded:
It is the JUDGMENT and FINDING of this Court on the evidence and testimony in this case that the plaintiffs did not offer contribution or reimbursement within the reasonable time period specified by law.
Whether that conclusion was correct under the facts adduced below is the issue beforé us.
The present action can be described as one to rehabilitate the title of co-tenants (or remaindermen) by offering to pay to the life tenant (or co-tenants) their fair share of an indebtedness secured by a mortgage on jointly owned real estate, when the life tenant purchased and later foreclosed the mortgage, thereby acquiring title to the real estate. It is also one for sale and division on the premise that it cannot be equitably divided.
It is clear that Andrew and Ellen Lanier each owned separate interests in this real estate as tenants in common, before her death, and upon Ellen’s death her husband became a life tenant of her interest in it. Tit. 16, § 12, Alabama Code of 1940. Insofar as her interest was concerned, Ellen’s heirs were his remaindermen. This relationship was discussed in Draper v. Sewell, 263 Ala. 250, 82 So.2d 303 (1955) which quoted from Ward v. Chambless, 238 Ala. 165, 189 So. 890, 893 (1939):
The relation of the life tenant to rever-sioners or remaindermen has been held to be that of quasi trustee. If this quasi trustee purchases an outstanding mortgage or other incumbrance, the purchase will be treated as having been made for “the joint benefit of himself and the re-versioners or remaindermen.” He will not be allowed to hold the mortgage or other incumbrance for his own exclusive benefit, if they are willing to contribute their cost of the acquisition, and do so within a reasonable time. .
The “reasonable time” within which one tenant must offer to contribute his proportionate share of the cost of acquisition of an outstanding lien by another co-tenant has no fixed definition. Savage v. Bradley, 149 Ala. 169, 43 So. 20 (1907) held that:
[I]n ordinary cases ... by analogy to the term fixed for the exercise of the *646 statutory right of redemption, two years is the limit of time within which election by a co-tenant should be made in order to avail himself of the redemptioner’s act.

This election within a reasonable time must be made after actual knowledge of the claim is possessed by the electing co-tenant. Gilb v. O’Neill, 225 Ala. 92, 98, 142 So. 397, 402 (1932) amplifies this requirement:
The existing relationship naturally tended to create a feeling of security and repose, rather than to excite vigilance and suspicion, and not until something appeared in the circumstances of the case to suggest overreaching . . . was a different attitude to be expected on the part of the cotenants . . . [Nothing short of actual knowledge would suffice to put complainants in position where laches would begin to run against them. .
The record disclosed evidence on behalf of the plaintiffs that they had no actual knowledge of Andrew Lanier’s acts until less than one month before (during January, 1966) he purchased the property at his own foreclosure sale on January 28, 1966. The undisputed evidence shows that early the next month, February, 1966, the plaintiffs employed a lawyer who promptly contacted opposing counsel in an effort to effect a settlement. Less than six months after their actual knowledge the plaintiffs filed this action in which they made their formal offer to contribute their fair share of expenses as determined by the court. Because Andrew Lanier was a life tenant of his late wife’s interest as well as owner of the other half of the property, the plaintiffs could not take possession of the land under their remainder interest or petition for a sale for division because of Andrew’s legal possession during his lifetime. From the record it appears that the plaintiffs had complied with the requirements of law when they made their offer of contribution on June 10, 1966.
Thereafter, when Andrew Lanier died on July 23, 1973, and after his will was admitted to probate in 1974, when the plaintiffs moved for a substitution of parties and prayed for a sale for division, they again made their offer of contribution of any amount found by the court to be proper in order to rehabilitate their interest in the property. Trial ensued on October 13, 1977. The defendants offered no evidence to rebut this evidence or to otherwise demonstrate laches on the part of the plaintiffs. Without more, it appears that the interval between the filing of suit in 1966 and trial in 1977 was a mere lapse of time. But this cannot be held detrimental to the plaintiffs because:
[M]ere delay that has resulted in no disadvantage to another or that has not operated to bring about changes of conditions and circumstances in consequence of which, “there can be no longer a safe determination of the controversy,” will not serve to bar a complainant’s right or remedy. . . . [Craig v. Root, 247 Ala. 479, 25 So.2d 147 (1946).]
We must conclude that the trial court’s decree containing a contrary finding is palpably wrong. 2A Ala.Dig. § 1008(1)(6).
The undisputed evidence adduced below established that the parties, plaintiffs and defendants, owned this real estate as tenants in common in the following shares:
Willie B. Beavers, Vio; Rosa L. Smith, Vio; Esterline Lanier, 5/io during her life; and the other defendants each owned an undivided Vs interest subject to the life estate of Esterline Lanier. It was also proved by the plaintiffs and undisputed by the defendants that the real estate, a house and lot, could not be equitably divided. No evidence was offered by the defendants to show that the plaintiffs owed any amount as contribution, and likewise the plaintiffs offered no specific evidence of an amount which would satisfy their obligation, if any is presently owed. The record does contain evidence that at the time of Ellen Lanier’s death on October 16, 1956 the balance on the mortgage indebtedness was $1,664.01. How this sum might be affected by supervening events, such as by the requirement that the life tenant pay taxes and keep interest charges down, Ward v. Chambless, 238 Ala. *647 165, 189 So. 890 (1939); Draper v. Sewell, supra, we cannot determine. Any such amounts must be ascertained in another hearing conducted for that purpose.
Because Andrew Lanier took title to the real estate as a quasi trustee for the joint benefit of himself and the remaindermen-plaintiffs; because the remaindermen gave notice of their willingness to contribute their share of the cost of acquisition within a reasonable time after they received actual knowledge; and because the undisputed evidence established the parties’ undivided interests and the necessity for a sale and division, the decree must be reversed and the cause remanded to enable the trial court to adjust the equities between the parties. That court is directed to ascertain the equitable amount owed by the plaintiffs to the defendants as contribution, order the real estate sold for division among the parties according to their interests, and determine the amounts distributable between them according to law. It is so ordered.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C. J., and MADDOX, JONES and SHORES, JJ., concur.